The appealing party has shown good grounds to reconsider the evidence. Upon much detailed reconsideration of the evidence, the undersigned reach different facts than those reached by the Deputy Commissioner and affirm in part and reverse in part the conclusions of law and the award of the Deputy Commissioner.
The undersigned find as fact and conclude as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement, which was filed on January 13, 1997, and at the hearing as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case.
2. The parties are properly before the Commission.
3. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
4. Transportation Insurance Company was the carrier on the risk. On or about September 10, 1992, GAB Robins was the servicing agent.
5. The employee-employer relationship existed between the parties at all relevant times.
6. Plaintiff sustained an admittedly compensable injury on September 14, 1990, following which the parties entered into a Form 21 Agreement. This injury was filed under I.C. File Number 082730.
7. Plaintiff suffered an additional period of temporary total disability beginning October 18, 1991, for which the parties entered into a Form 26 Supplemental Agreement, approved by the Commission on March 18, 1992.
8. Plaintiff has not received benefits under the Act since November 2, 1993.
9. Plaintiff has not returned to work for the defendant-employer since October 18, 1992.
10. On January 27, 1994, plaintiff filed a Form 33 Request for Hearing, in which he alleged an injury by accident to his knees and back on September 10, 1991. On November 18, 1994, plaintiff filed a Form 18 Notice of Accident and Claim of Employee. This claim is the subject of I.C. File 226422.
11. Plaintiff did not file a claim within two years from the date of the September 10, 1991 alleged injury.
12. The parties stipulated that the issue for determination was whether the defendants are estopped to assert N.C. Gen. Stat. § 97-24 as a defense. However, evidence was presented and the parties argued in their briefs and in oral arguments before the Commission the issues concerning the extent of plaintiff's disability as a result of the alleged September 10, 1991, injury by accident. Therefore, the Commission also enters a decision on these issues.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with some modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old. He is a high school graduate.
2. Plaintiff worked for defendant-employer for over seventeen years. Plaintiff was a shop technician who repaired, installed and removed vending machines. Plaintiff sustained a compensable injury by accident (I.C. File Number 082730) on September 14, 1990, when a coffee machine he was attempting to move slid backward and cut off the tip of his right middle finger.
3. Plaintiff returned to work for defendant-employer as a warehouseman ordering stock, putting up stock, and filling orders. On September 10, 1991, plaintiff was loading stock onto a truck and missed a step while exiting the truck. Plaintiff fell on some concrete and landed on his feet while at the same time striking his hands on both sides of a building as he attempted to catch himself. The plaintiff felt as if "everything pushed in [his] body." Plaintiff reported the injury to the lead office clerk, Annie Bethea, the next day.
4. Following the fall on September 10, 1991, plaintiff continued to work until about October 18, 1991, when he had surgery on his hand related to the compensable injury on September 14, 1990.
5. On October 21, 1991, plaintiff first reported knee problems to his hand surgeon, Dr. Theodore Rodgers, III. Dr. Rodgers injected plaintiff's right knee, after diagnosing plaintiff with arthritis in both knees which pre-existed any 1991 injury. Dr. Rodgers stated that the fall on September 10, 1991, aggravated plaintiff's degenerative arthritis. Dr. Rodgers last treated plaintiff in November 1993.
10. On July 22, 1992, plaintiff was seen by Dr. Victor Keranen, a neurosurgeon in Fayetteville. Diagnostic testing disclosed advanced degenerative arthritic changes of the knees and spine. Dr. Keranen agreed with Dr. Rodgers that the fall on September 10, 1991 aggravated plaintiff's preexisting arthritis in his knees. Plaintiff last saw Dr. Keranen on October 20, 1993.
11. On April 5, 1993, plaintiff was examined by Dr. William Richardson, an orthopedic surgeon at Duke University Medical Center, at which time bone scans, lab studies, protein electrophoresis, and an EMG were conducted. Following testing, plaintiff was found to have a monoclonal spike with possible multiple myeloma, a bone marrow cancer. Dr. Richardson diagnosed plaintiff with osteoarthritis of the lumbar spine, a pre-existing condition, which was aggravated by the fall in 1991. Plaintiff was last treated by Dr. Richardson on June 28, 1993.
12. Between August 29, 1993 and September 14, 1993, plaintiff received treatment from Dr. Bruno Urban at the Duke Pain Clinic.
13. Beginning in October 1993, plaintiff was treated by Dr. Veeraindar Goli, a psychiatrist at Duke who specializes in chronic pain management. Plaintiff was hospitalized in the Duke Psychiatric Unit from August 29, 1994 until September 14, 1994, and from November 27, 1994, until December 7, 1994, for depression and severe pain. Dr. Goli was unable to express an opinion as to plaintiff's ability to work due to his psychological condition. Plaintiff's depression was causally related to his injury by accident on September 10, 1991, which aggravated the preexisting arthritic condition in plaintiff's back and knees. However, plaintiff's depression was not disabling except for the two periods of hospitalization and any disability due to or treatment for depression after the knee replacement surgery on August 16, 1995 was not causally related to the fall on September 10, 1991.
14. On November 14, 1994, plaintiff was seen by Dr. Ward Oakley, an orthopedic surgeon. Dr. Oakley noted that plaintiff had undergone knee surgery approximately ten to fifteen years earlier. On August 16, 1995, Dr. Oakley performed right knee replacement surgery on the plaintiff, and he stated that plaintiff would have required the knee replacement regardless of the injury by accident on September 10, 1991. Based upon Dr. Oakley's opinion, the Commission finds that any trauma sustained as a result of the fall on September 10, 1991, was not significant because plaintiff did not have surgery until four years later and that the fall did not contribute to the need for knee replacement surgery.
15. There is insufficient medical evidence of record to prove by the greater weight that plaintiff sustained any disability as a result of the injury to his knees and back other than the two hospitalizations for depression caused by the knee and back pain plaintiff experienced.
16. The only evidence presented of continuing disability related to the fall on September 10, 1991, was that of vocational witness Thomas Baldwin, Ph.D., who evaluated plaintiff on February 27, 1997, at the request of plaintiff's counsel. Dr. Baldwin stated that plaintiff was unable to work as a truck driver due to the aggravation to his knees and spine. Dr. Baldwin further stated that plaintiff's injuries led to the development of chronic depression which prohibited plaintiff from returning to work. This opinion is not accepted as competent evidence, as Dr. Baldwin rendered an opinion outside his area of expertise. Issues regarding medical causation may not be addressed by a vocational expert. Dr. Baldwin was qualified as an expert in this case to determine whether suitable employment existed outside the employment offered by the employer, but Dr. Baldwin failed to help plaintiff make such a determination by conducting a job market survey or providing other assistance.
17. When plaintiff went out of work on October 18, 1991, he was paid temporary total disability compensation by CNA, the carrier responsible for his finger injury on September 13, 1990, pursuant to a Form 26 Agreement. Linda Hodges, a representative of GAB Robins in Raleigh, North Carolina, handled plaintiff's claim against the defendant-employer with regard to his knee problems. In a statement recorded July 20, 1992, Ms. Hodges told plaintiff that GAB would be able to pay for his knee problems but not for his finger problems. In a subsequent conversation Ms. Hodges also told plaintiff that once CNA terminated his benefits, GAB would pick up his weekly benefits if he was still under a doctor's care for the knee injury.
18. CNA continued to pay temporary total disability compensation to plaintiff until November 2, 1993. The parties in I.C. File Number 082730 entered into a compromise settlement agreement for the finger injury on January 23, 1997.
19. Once benefits were terminated by CNA, plaintiff contacted GAB and was told by adjuster Angela Biggs that she would check on his claim and make sure he received his check for benefits. After the two-year period following the September 10, 1991 injury expired, defendant GAB informed plaintiff that his claim was denied.
20. Plaintiff relied to his detriment on the representations made by agents of the defendant-carrier. He did not file a Form 33 Request for Hearing with the Commission until January 27, 1994, which was not within the two-year period following the September 10, 1991, injury.
21. The conduct of the carrier's representatives misled the plaintiff and conveyed to him that he would be compensated for the injury on September 10, 1991 and any resulting disability. Plaintiff was lulled by these misrepresentations into a false sense of security until after the two-year period had run.
22. There is no evidence of record from which the Commission can calculate plaintiff's average weekly wage as of the September 10, 1991, injury by accident.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and within the course and scope of his employment on September 10, 1991. N.C. Gen. Stat. § 97-2(6).
2. The requirement that a claim be filed within a certain time is a condition precedent to the right to compensation. For this reason, where a claim for compensation under the provisions of the Workers' Compensation Act has not been filed with the Industrial Commission within the statutory period after the date of the accident which resulted in the injury for which compensation is claimed, or where the Industrial Commission has not acquired jurisdiction of such claim within the statutory period, the right to compensation is barred. Winslow v.Carolina Conference Ass'n, 211 N.C. 571, 191 S.E. 403
(1937); N.C. Gen. Stat. § 97-24.
3. The defendants in this case lulled plaintiff into a false sense of security which caused him not to file a claim with the North Carolina Industrial Commission. Plaintiff has met his burden of proof to establish that defendants should be estopped from asserting N.C. Gen. Stat. § 97-24 as a bar to his claim.Carver v. Dixie Furniture Co. 115 N.C. App. 570,447 S.E.2d 789 (1994); Belfield v. Weyerhaeuser Co.,77 N.C. App. 332, 335 S.E.2d 44 (1985).
Therefore, the Industrial Commission has jurisdiction over this claim even though plaintiff failed to file a claim until January 27, 1994, which was more than two years after the accident.
4. As a result of the depression which was causally related to the fall on September 10, 1991, plaintiff was temporarily totally disabled for the periods from August 29, 1994 to September 14, 1994 and from November 17, 1994 until December 7, 1994 and is entitled to receive compensation from defendants at a rate to be determined. N.C. Gen. Stat. § 97-29.
5. As a result of the injury by accident on September 10, 1991, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, including psychiatric treatment. However, plaintiff is not entitled to have defendants pay for medical treatment for his knees or psychological problems after the date of the knee replacement surgery. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at a rate to be determined for the periods from August 19, 1994 to September 14, 1994 and from November 17, 1994 until December 7, 1994. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of the compensable injury by accident on September 10, 1991. The approved expenses shall not include any treatment after August 16, 1995, for plaintiff's knees or psychological condition.
3. The parties are ORDERED to submit to Commissioner Laura Kranifeld Mavretic within thirty days from the date of this Opinion and Award a stipulation as to the plaintiff's average weekly wage as of September 10, 1991, or a Form 22 Wage Information Statement from which plaintiff's average weekly wage can be calculated.
4. Defendants shall pay the costs.
This the ___ day of February 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
LKM/jth